UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KIM WOLFORD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     vs. | ) | 1:08-cv-1570-RLY-JMS |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE | ) | |
| INSURANCE COMPANY, | ) | |
|     Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Ron Wolford ("Ron"), Kim Wolford's ("Plaintiff") husband, was hit by an automobile in front of their house by Kenton Wilson ("Wilson"), an underinsured motorist. Plaintiff was summoned to the scene of the accident by her neighbor and witnessed Ron's extreme suffering. Ron was taken to a local hospital, where he died hours later. At the time of his death, Plaintiff and Ron were insured under a policy of automobile insurance issued by State Farm Mutual Automobile Insurance Company ("State Farm"), which included underinsured motorist (or "UIM") coverage. Plaintiff settled with Wilson's insurance company for the limits of his policy, and with her own insurance carrier, State Farm, for the "per person" limits of its underinsured motorist policy for Ron's bodily injury. Plaintiff thereafter filed the present lawsuit, seeking underinsured motorist proceeds in her own right as compensation for the emotional distress negligently inflicted upon her by Wilson.

1

State Farm now moves for summary judgment, and Plaintiff cross moves for partial summary judgment. The parties have stipulated to the facts of this case, and thus, the case is well-suited for summary disposition. For the reasons explained below, the court **GRANTS** State Farm's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Partial Summary Judgment.

I.  **Summary Judgment Standard of Review**

Summary judgment is appropriate where the pleadings, affidavits, and other materials on file demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Jurisdiction of this case is based upon diversity of citizenship, and, as all material events occurred in Indiana, the parties agree that Indiana substantive law applies. "Indiana courts have recognized that '[c]onstruction of an insurance policy is a question of law for which summary judgment is particularly appropriate.'" *Myles v. General Agents Ins. Co. of Am., Inc.*, 197 F.3d 866, 868 (7th Cir. 1999) (quoting *Piers v. American United Life Ins. Co.*, 714 N.E.2d 1289, 1290 (Ind. Ct. App. 1999)).

The interpretation of an insurance policy is subject to the same rules of construction and interpretation as any other contract. *Amerisure, Inc. v. Wurster Constr. Co., Inc.*, 818 N.E.2d 998, 1001 (Ind. Ct. App. 2004); *Myles*, 197 F.3d 866 at 868 (applying Indiana law). Thus, the goal in interpreting an insurance policy is to ascertain and enforce the parties' intentions as expressed in the written contract, reading the "four corners" of the document as a whole. *Am. Family Ins. Co. v. Globe Am. Cas. Co.*, 774

N.E.2d 932, 935 (Ind. Ct. App. 2002). If the terms of an insurance policy are clear and unambiguous, the court gives that language its plain and ordinary meaning and enforces the policy according to its terms. *Castillo v. Prudential Prop. & Cas. Ins. Co.*, 834 N.E.2d 204, 206 (Ind. Ct. App. 2005); *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685, 688 (Ind. Ct. App. 2001). If, however, the language of the policy is ambiguous, the court construes the policy against the insurer. *Rice*, 651 N.E.2d at 688. Here, as shown below, there is no dispute as to the meaning of the underinsured motorist provisions at issue in this case.

## II.     Stipulated Facts

### A.     The Underlying Accident

1. Prior to October 22, 2006, Plaintiff and her husband, Ron, purchased a policy of automobile insurance from State Farm, which policy contained underinsured motorist motor vehicle coverage in the amount of $250,000 per person and $500,000 per accident.

2. On October 22, 2006, Ron was struck by a vehicle negligently operated by Wilson while Ron attempted repairs on Plaintiff's automobile parked in front of their residence in Columbus, Indiana. The vehicle which Wilson was driving was insured under only one automobile insurance policy. That policy was issued by Progressive Insurance Company ("Progressive") and provided liability insurance coverage with per person limits of $50,000 and per occurrence limits of $100,000.

3. At the time of the accident, Plaintiff was in the house and did not see Wilson's

      vehicle strike her husband.

4. Plaintiff was summoned from her house by a neighbor, Charles Warren, who heard the accident and saw Ron lying in the street. Ron was severely injured.

5. Plaintiff came out of her house, walked into the street, and comforted her husband.

6. She arrived at her husband's side just a few minutes after the accident occurred.

7. Ron was removed from the scene by ambulance personnel.

8. Ron died later that same day.

9. As a direct and proximate result of Plaintiff's involvement at the occurrence of her husband's death, Plaintiff suffered emotional distress and mental anguish. This emotional distress caused physical manifestations including increased symptoms of depression and insomnia.

10. A wrongful death estate was opened for Ron's heirs-at-law – his wife, the Plaintiff, and their two children, Timothy Luke Wolford, date of birth April 13, 1997, and Emma Louise Wolford, date of birth November 4, 1999.

11. The estate settled with Progressive for the $50,000 limits of Progressive's policy in consideration for the estate's release of Wilson and all other persons covered under Progressive's policy for all claims which could have been asserted by the estate arising out of the death of Ron. Under the terms of the settlement, Plaintiff reserved her right, individually, to pursue a claim for negligent infliction of emotional distress against Wilson and she did not release that claim. The settlement was entered into by the estate with State Farm's permission.

12. The estate also settled with State Farm for the $250,000 per person limits of State Farm's underinsured motor vehicle coverage less the $50,000 paid by Progressive, in satisfaction of all claims which could be asserted by the estate arising out of the death of Ron. Plaintiff did not release her claim for underinsured motor vehicle benefits which she contends are owed based upon her own, individual claim for negligent infliction of emotional distress.

13. Plaintiff settled with Progressive for the $50,000 per person limits of Progressive's liability coverage on Wilson in consideration of her release of her negligent infliction of emotional distress claim against Wilson.

14. State Farm was given notice of, and consented to, Plaintiff's settlement of her claim against Wilson for negligent infliction of emotional distress.

**B.    Applicable Policy Provisions**

15. The policy issued by State Farm provided for UIM coverage, pursuant to which State Farm agreed to ". . . pay damages for **bodily injury** an insured is legally entitled to recover from the owner or driver of an **underinsured motor vehicle**." (Stipulation of Fact, Ex. A at 12). It further provided that the **bodily injury** must be: sustained by an *insured* and caused by an accident that involves the operation, maintenance, or use of an **underinsured motor vehicle** as a motor vehicle. (*Id*.).

16. The policy provided that, "**Bodily Injury** means bodily injury to a **person** and sickness, disease, or death that results from it." (*Id*. at 2).

17. Finally, the UIM coverage contained the following provision:

> **Limits – Underinsured Motor Vehicle Coverage**
>
> 1. The amount of coverage is shown on the declarations page under "Limits of Liability – W – Each Person, each Accident." Under "Each Person" is the amount of coverage for all damages due to **bodily injury** to one **person**. **"Bodily injury** to one **person"** includes all injury and damages to others resulting from this **bodily injury**, and all emotional distress resulting from this **bodily injury**. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to **bodily injury** to two or more **persons** in the same accident.

(*Id.* at 14).

18. The Limits provision is substantially the same as the Limits provision of the liability coverage afforded under the policy, which reads as follows:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability – Coverage A – Bodily Injury, Each Person, Each Accident." Under "Each Person" is the amount of coverage for all damages due to **bodily injury** to one **person**. **"Bodily injury** to one **person**" includes all injury and damages to others resulting from this **bodily injury**, and all emotional distress resulting from this **bodily injury** sustained by other **persons** who do not sustain **bodily injury**. Under "Each Accident" is the total amount of coverage, subject to the amount shown under "Each Person," for all damages due to **bodily injury** to two or more **persons** in the same accident.

(*Id.* at 7).

## III. Discussion

Plaintiff seeks underinsured motorist benefits under the State Farm automobile liability policy for the emotional distress she experienced upon seeing and comforting her dying husband following the October 22, 2006, accident. State Farm contends that

Plaintiff does not have an independent claim for "bodily injury" under the policy; rather, her damages are subject to the per person limit of $250,000 for all damages resulting from bodily injury to one person (i.e., Ron). State Farm contends that because it paid those limits in full in settlement of the estate's UIM claim, Plaintiff cannot recover from State Farm.

Plaintiff contends that her claim for emotional distress qualifies as an independent bodily injury under the State Farm policy, and is therefore subject to a separate per person limit of $250,000. Plaintiff submits that she could recover up to $200,000 in UIM benefits (the $250,000 limit less the $50,000 paid by Progressive in settlement of her negligent infliction of emotional distress claim against Wilson).

In support of its position, State Farm cites the court to *State Farm Mut. Auto. Ins. Co. v. D.L.B.*, 881 N.E.2d 665 (Ind. 2008) and *State Farm Mut. Auto. Ins. Co. v. D'Angelo*, 875 N.E.2d 789 (Ind. Ct. App. 2008). In support of Plaintiff's position, Plaintiff relies primarily on *State Farm Mut. Auto. Ins. Co. v. Jakupko*, 881 N.E.2d 654 (Ind. 2008). *D.L.B.* and *Jakupko*, decided on the same day by the Indiana Supreme Court, merit discussion. Significantly, all three cases employ the same policy language[1] as that at issue here.

In *Jakupko*, the plaintiff, Richard Jakupko ("Richard"), was in an automobile

---

[1] The only difference between the policies at issue in the cases relied upon by the parties and the present case is that, in the definition of "bodily injury to one person," the present case includes the following language, "*and all emotional distress resulting from this bodily injury*." (*See* Findings of Facts ## 17-18).

7

accident caused by Brianne Johnson, an underinsured motorist. 881 N.E.2d at 655. At the time of the accident, Richard's wife, Patricia, and their children, Nicholas and Matthew, were passengers in the automobile driven by Richard. *Id*. Richard suffered severe injuries, including quadriplegia and a closed head injury, resulting in permanent mental deficits. *Id*. Patricia, Nicholas, and Matthew each suffered emotional distress from being in the accident. *Id*.

The Jakupkos were insured under a policy issued by State Farm which provided for underinsured motorist coverage with limits of $100,000 for "each person" and $300,000 for "each accident." *Id*. State Farm paid $100,000 on Richard's claim. *Id*. Patricia, Nicholas, and Matthew then sought an additional $200,000 for their emotional distress. *Id*. State Farm denied the claim on grounds that Patricia's, Nicholas's, and Matthew's claims for emotional distress were caused by Richard's injuries, and thus, were included in the "each person" limit of liability for his bodily injury claim. *Id*. Both the trial court and the Court of Appeals ruled in favor of the Jakupkos. *Id*.

On transfer, the Supreme Court affirmed the decision of the trial court. In reaching its decision, the Supreme Court found that emotional distress is encompassed within the term "bodily injury," as that term is defined in the State Farm policy. *Id*. at 657-58 (citing *Wayne Twp. Bd. of School Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1210-11 (Ind. Ct. App. 1995)) (finding that the policy extended the meaning of "bodily injury" beyond physical injury to include sickness, which an average lay person would not read as excluding mental anguish). The Court further found, however, that the term "bodily

injury" "does not include emotional damage unless it arises from a bodily touching." *Id.* at 658-59 (citing *Wayne Twp.*, 650 N.E. 2d at 1210). Thus, the Court reasoned, because Patricia, Nicholas, and Matthew were involved in the accident which severely injured Richard, they suffered a "bodily injury" under the State Farm policy, such that their claims for emotional distress were subject to the separate "per person" limitation of $100,000, subject, however, to the "per accident" limitation of $300,000. *Id.* at 661-62.

In *D.L.B., supra*, D.L.B.'s six-year-old cousin, Seth Baker, was struck and killed by an automobile driven by Herbert Wallace ("Wallace") as he was riding his bicycle. 881 N.E.2d at 665. Although D.L.B., who was four years old at the time, was not physically injured, D.L.B. suffered from post-traumatic stress disorder as a result of witnessing the fatal accident. *Id.*

Wallace was insured by State Farm under a bodily injury policy with limits of $100,000 for "each person" and $300,000 for "each accident." *Id.* State Farm paid $100,000 to Seth Baker's parents arising out of their son's death, but denied a claim brought by D.L.B.'s mother on D.L.B.'s behalf. *Id.* at 666.

Litigation ensued. *Id.* The trial court and the Court of Appeals both held that D.L.B. had a separate $100,000 "per person" bodily injury claim against Wallace under State Farm's policy. *Id.* The Supreme Court, citing *Jakupko*, reversed the trial court, and reasoned as follows:

> In Jakupko, we hold that "bodily injury," as defined in the policy at issue in that case, includes emotional distress. *Jakupko*, 881 N.E.2d at 658 (citing *Wayne Twp. Bd. of Sch.*

> *Comm'rs v. Indiana Ins. Co.*, 650 N.E.2d 1205, 1210 (Ind. Ct. App. 1995), *trans. denied*). However, we note in *Jakupko* that the term "bodily injury" does not include emotional damage unless it arises from a bodily touching (*Wayne Township* found that the "bodily touching . . . inherent to child molestation and the resulting emotional injury suffered by the victim of child molestation is bodily injury.") *Jakupko*, 881 N.E.2d at 659 (quoting *Wayne Township* and citing *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284 (Ind. Ct. App. 2003)). The *Armstrong* case is particularly on point as it held that the parents of a child killed in an automobile accident could not recover under the uninsured motorist coverage of their insurance policy because they had not "suffered a physical impact in the accident that took [their daughter's] life." *Armstrong*, 785 N.E.2d at 293.
>
> D.L.B. argues that although he did not suffer a direct impact, his emotional distress was accompanied by physical manifestations. As Judge Darden observes in his dissent, however, these physical manifestations were not the result of an impact, force, or harm to D.L.B.'s body and so do not fall within the ambit of *Wayne Township*; rather, this case is controlled by *Armstrong*.

*Id.* (*see also State Farm Mut. Auto. Ins. Co. v. D'Angelo*, 875 N.E.2d 789, 798 (Ind. Ct. App. 2007, *trans. denied.* March 24, 2008) (finding that insured who witnessed her minor son's death after he was hit by an automobile did not suffer "bodily injury" under the State Farm policy because she was not in the accident, and thus, her claim for negligent infliction of emotional distress was subject to the "per person" UIM coverage under the policy).

Although the court is sympathetic to the Plaintiff's claim, the Indiana Supreme Court's holdings in *Jakupko* and *D.L.B.* foreclose Plaintiff's claim for negligent infliction of emotional distress under the State Farm policy's IUM provision. Unlike the plaintiffs

in *Jakupko*, Plaintiff was not involved in the accident which claimed the life of her husband. Unlike *D.L.B.*, Plaintiff did not witness the accident; rather, she came upon the accident after-the-fact. Accordingly, Plaintiff did not suffer "bodily injury" under the policy, and thus, her claim is not subject to the separate "per person" limitation of $250,000 under the policy. State Farm's Motion for Summary Judgment is therefore **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment is **DENIED**.

### IV.   Conclusion

Plaintiff is not entitled to underinsured motorist coverage for her own claim of negligent infliction of emotional distress because, as one who came upon the accident after it occurred, she did not suffer "bodily injury" within the meaning of the policy. Accordingly, State Farm's Motion for Summary Judgment (Docket # 21) is **GRANTED**, and Plaintiff's Motion for Partial Summary Judgment (Docket # 24) is **DENIED**.

**SO ORDERED** this  7th   day of January 2010.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

John B. Drummy
KIGHTLINGER & GRAY
jdrummy@k-glaw.com

Mark D. Gerth
KIGHTLINGER & GRAY
mgerth@k-glaw.com

Landyn K. Harmon
LANDYN K. HARMON, ATTORNEY AT LAW
lharmon@iquest.net